THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**Steven Banks**
*Corporation Counsel*

**Taylor Anvid**
phone: (212) 356-2196
email: tanvid@law.nyc.gov

August 7, 2026

**By ECF**
Gregory H. Woods
United States District Judge
United States District Court, Southern District of New York
40 Foley Square
New York, New York 10007

Re: *Robert McGrath v. City of New York,* 26-cv-05466 (GHW)

Your Honor:

I am an Assistant Corporation Counsel in the Office of Steven Banks, Corporation Counsel of the City of New York, attorney for Defendant City of New York (“City” or “Defendant”) in the above-referenced action. This letter is submitted by Defendant to request a pre-motion conference in anticipation of its filing of a motion to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Factual Background

Local Law 52 of 2026 (“LL52”) was adopted by the New York City Council (“Council”) on January 29, 2026 to ensure that for-hire vehicle (“FHV”) drivers (“Drivers”) are not wrongfully deactivated from high-volume FHV services (“Services”). In doing so, LL52 maintains rider safety while also shielding Drivers from arbitrary deactivations and potentially losing their livelihoods due to the capricious preferences of an individual rider or a Service platform error. LL52 regulates conduct between Services and their affiliated Drivers – not customers electing to use high-volume FHV services.

Plaintiff asserts that LL52 violates his First Amendment rights because he chooses to use Uber, Lyft, or another for-hire vehicle service because of their brand identity, which allows him to make assumptions about Driver “quality” and “the information conveyed by platform marks

and related marketplace signals." Complaint ¶ 15. Plaintiff claims LL52: 1) burdens his right to receive "truthful non-misleading commercial information" (Complaint ¶ 68); 2) compels a "materially altered affiliation message" and "compels continued affiliation and changes [a] mark's meaning." (Complaint ¶¶ 74-75); and 3) chills Plaintiff's feedback and burdens rider speech (Complaint ¶¶ 78, 82, 14, 62). Plaintiff also claims he has the right to assert First Amendment claims on behalf of "conscientious third-party drivers." Complaint ¶ 85-86.

Plaintiff Lacks Standing to Challenge LL52

Standing is a threshold question that must be addressed by a court in the first instance. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). The inquiry is "especially rigorous" when a court has to decide whether governmental action is unconstitutional. *Raines v. Byrd*, 521 U.S. 811, 819-820 (1997). As a general rule, "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). Here, Plaintiff lacks standing, which is a jurisdictional defect that should be addressed expeditiously. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5 (1992)("[S]tanding is to be determined as of the commencement of suit.").

To establish standing, a plaintiff must demonstrate, *inter alia*, "an injury in fact—'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Tafuto v. Donald J. Trump for President, Inc.,* 827 F. App'x 112, 114 (2d Cir. 2020) (citations omitted). *See also Knife Rights, Inc. v. Cyrus Vance, Jr.*, 802 F.3d 377, 383 (2d Cir. 2015). Along with the injury in fact component, a plaintiff must establish a sufficient causal connection between the injury and the conduct complained of and a likelihood that the injury will be addressed by a favorable decision. *Susan B. Anthonys List v. Driehaus*, 573 U.S. 149, 134 S. Ct. 2334 (2014). Here, Plaintiff has failed to establish that he satisfies all three prongs of the standing analysis.

First, LL52 regulates the working relationship between Services and Drivers. It does not regulate riders, like Plaintiff. Thus, it is unclear what non-speculative injury Plaintiff can directly attribute to LL52. Plaintiff tries to stand in the shoes of the Services. He rhetorically positions himself as if he were a trademark holder (i.e., a Service) enforcing a brand interest whose speech rights are allegedly impacted by LL52. Complaint ¶¶ 67-75. Yet, Plaintiff has no ability to do so. *See JC Hosp. v. Hochberg*, 703 F. Supp. 3d 448, 464 (S.D.N.Y. 2023)("Plaintiffs are neither the owners nor the assignees of the trademarks, and therefore they lack standing to sue for dilution under [the Lanham Act]"). *See also Powers*, 499 U.S. at 410 (holding that as a general rule, "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."). Therefore, any alleged First Amendment claims he makes on behalf of the Services as trademark holders, including an alleged dilution of Uber or Lyft's "mark," cannot reasonably be construed to result in an injury-in-fact to Plaintiff.

Nor can Plaintiff satisfy the third-party standing doctrine. Under the third-party standing doctrine, a litigant must satisfy three criteria: (i) "[t]he litigant must have suffered an 'injury in fact'"; (ii) "the litigant must have a close relation to the third party"; and (iii) "there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers,* 499 U.S. at 410-11 (internal citations omitted). Plaintiff fails to satisfy this standard. The fact that Uber and

Lyft have not raised Plaintiff's First Amendment trademark argument in the related actions is not indicative of an inability to protect their own interests. It is an indication that such argument lacks merit. Accordingly, Claims I and II, which are based on alleged harm to the Services, do not constitute an injury-in-fact to Plaintiff sufficient to establish standing.[1]

In Claims III and IV, Plaintiff states his fear that the information disclosed to Drivers pursuant to LL52 could lead to rider identification would effectively chill his speech. Yet, in the same breath, Plaintiff states he "intends to keep using rider ratings, comments, and complaint channels" to report Driver behavior. Complaint ¶ 14. The fact that Plaintiff has affirmatively stated that he "intends to keep using" these mechanisms undermines any assertion that his speech is, or will be, chilled. *See Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)(stating that "[w]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech.").

<u>LL52 Does Not Impermissibly Compel Plaintiff's Speech or Expressive Association</u>

Even if Plaintiff could establish he has standing, he cannot substantiate a First Amendment violation. As detailed more fully in Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction (ECF No. 20), Plaintiff improperly attempts to transform his concerns about Driver quality into a First Amendment violation by invoking the Services' "private marks," and citing his alleged rights as a "listener." Yet, Plaintiff does not allege he is the holder or owner of any Service trademark, and non-trademark owners, as part of the listening public generally, are only entitled to factually accurate advertising speech about the "mark" or content contained in a Service's advertisements, neither of which is implicated here.

LL52 regulates *conduct* and does not fall within the First Amendment's speech protections as it is not "inherently expressive." *Rumsfeld*, 547 U.S. at 65–66 (*quoting United States v. O'Brien*, 391 U.S. 367, 376 (1968)). As regulation of the deactivation process does not contain a "significant expressive element," the First Amendment is not implicated. *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986). Likewise, Plaintiff has failed to adequately plead that LL52 compels expressive association in violation of the First Amendment by forcing Services to include an "unwanted driver" under their trademarks. "[T]he right to expressive association is implicated only when the employment decision 'goes to the structure and identity of the association as an association.'" *Compasscare*, 125 F.4th at 61 (*quoting Slattery*, 61 F.4th at 290). These provisions do not infringe on Plaintiff's ability to advocate his own viewpoints, let alone go to the structure and identity of any Service as an association.

Respectfully submitted,

Taylor Anvid
Assistant Corporation Counsel

cc: Plaintiff's Counsel of Record (by ECF)

[1] The same reasoning applies to Claim V regarding "conscientious drivers."